```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                        07-CV-4266(JMR/FLN)
```

Shashi Pandey                    )
                                 )
     v.                          )          ORDER
                                 )
Bio-Medical Applications of      )
Minnesota, Inc.; aka BMA; also   )
dba Fresenius Medical Care       )
North America aka FMCNA,         )
Fresenius Medical Care, and      )
National Medical Care, Inc.,     )
or NMC; and Fresenius Medical    )
Care AG & Co. KGaA; all          )
foreign corporations doing       )
business in Minnesota            )


This is ultimately an employment dispute. Plaintiff, Shashi Pandey, worked as a social worker for defendant Bio-Medical Applications of Minnesota, Inc. ("Bio-Medical").[1] She claims her employment was terminated as a result of discrimination based on her race, ethnicity, disability, and the company's failure to accommodate her disability by providing part-time work. She also claims the company violated its duty to maintain confidentiality.

---

[1] Plaintiff's complaint lists two defendants: Bio-Medical Applications of Minnesota, Inc., and Fresenius Medical Care AG & Co. KGaA, and states that, "[u]pon hiring and thereafter, Ms. Pandey received information interchangeably identifying her as an employee of BMA, of Fresenius Medical Care and of Fresenius Medical Care North America." [Compl. ¶ 6.] Defendant's answer identifies Bio-Medical Applications of Minnesota, Inc., as the defendant, and states plaintiff's complaint incorrectly listed "BMA, Fresenius Medical Care North America, FMCNA, Fresenius Medical Care, National Medical Care, Inc., NMC, and Fresenius Medical Care AG & Co. KGaA."

Defendant seeks summary judgment arguing plaintiff is not disabled, is not qualified as a social worker, and is not a member of a protected class. Further, defendant claims plaintiff cannot make out a retaliatory firing claim, and that it did not breach confidentiality. Plaintiff opposes, claiming there are unresolved questions of fact which must be decided by a jury. The Court denies summary judgment on plaintiff's claims of retaliation and national origin race discrimination. Summary judgment is granted on plaintiff's breach of confidentiality claim and discrimination claim under the Americans With Disabilities Act ("ADA").

I. Background[2]

A. Employment

Bio-Medical provides outpatient dialysis treatment at clinics throughout Minnesota. It employs social workers to counsel patients, maintain patient records, and provide patients with company policies and procedures. A clinic director at each site oversees the day-to-day operation and reports to an area manager, who supervises multiple clinics.

Shashi Pandey is from India. (Pl.'s Mem. Opp'n. Summ. J. 2.) She was hired as a renal social worker in June, 1998. She worked in several Bio-Medical clinics including Shakopee, Mora, and South

---

[2] The facts set forth herein are considered in the light most favorable to plaintiff, the non-moving party, in accordance with Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). These facts are taken from the parties' pleadings, and are not determinations on the merits.

Minneapolis, but she primarily served the Park Avenue clinic. During the relevant time period, Lynne Hamilton was the Park Avenue clinic director.

Defendant contends plaintiff's job performance fell below company standards during her five years of employment. For example, within months of her hiring, South Minneapolis clinic director Gayle Schwab complained that plaintiff conducted inconsistent patient visits, failed to update annual patient assessments, back-dated patient notes, and was inconsistent in her attendance, for which she received a verbal warning. (Pl.'s Dep. 143:7-16.) During plaintiff's June, 2001 performance review, Hamilton noted plaintiff had difficulty clarifying insurance issues and submitting reports on time. (Smith Aff. Ex. 15.) Plaintiff's June, 2002 review cited additional communication problems noting, "Shashi at times has difficulty explaining insurance information to patients, families and staff in a clear and precise manner." (Sarnoski Aff. Ex. A.) In July, 2003, a patient's relative complained to the area manager of plaintiff's handling of insurance matters and asked for a different social worker.

Plaintiff disputes defendant's characterization of her job performance. She cites her positive 2001 and 2002 performance reviews in which Hamilton rated Pandey as exceeding or meeting standards in all areas.

Plaintiff also claims Schwab treated her differently from non-

minority social workers by seeking out evidence of flaws in her work, by telephoning other facilities to "check up" on her, and by requiring her to call when running late between appointments. She further states Schwab denied a patient's request to assign Pandey as his social worker. Plaintiff compares her situation to fellow social worker Karen Eckstrom, who claims she did not have to check in with her supervisors when running late, nor did she face repercussions when patients complained about her.

In 2003, Carol Meredith became Bio-Medical's area manager for six clinics, including the Park Avenue clinic. When Meredith met Pandey, she "observed that Pandey was disorganized, appeared to confuse her facts, and was unable to articulate information about patient insurance concerns." (Def.'s Mem. Supp. Summ. J. 10.) Meredith told other employees plaintiff "confused" her, and that she could not understand Pandey because of her accent. (Eckstrom Dep. 32:3-7.) Karen Eckstrom explained plaintiff was from India, and that English was her second language.

Over the next month, Meredith asked the clinic directors for negative feedback concerning Pandey. As part of this solicitation, Meredith emailed Schwab asking her to identify "area's [sic] that you are aware of that she is lacking in." (Sarnoski Aff. Ex. K.) Schwab replied Pandey could be "disorganized and inarticulate."

With this feedback, Meredith devised a May, 2003 action plan to improve plaintiff's performance, under which plaintiff was to

4

communicate insurance information more effectively, and submit required forms and reports on time. Plaintiff maintains the plan expired on June 2, 2003, and neither Hamilton nor Meredith followed up with her, leading her to believe she had addressed their concerns.

  B. <u>The Family Medical Leave Act ("FMLA")</u>

  On July 9, 2003, Hamilton met with Pandey and accused her of improperly completing forms. According to Pandey, the meeting distressed her and she could not stop crying. (Pandey Aff. ¶ 4.) After the meeting, plaintiff told Hamilton she had a doctor's appointment and left work. The next day, plaintiff's doctor faxed Bio-Medical a note stating, "I am putting Shashi on medical leave until I see her in 2 weeks." Bio-Medical classified plaintiff's leave as being covered by the FMLA. Hamilton gave plaintiff FMLA paperwork on July 10, 2003.

  On July 14, 2003, Hamilton received medical certification of plaintiff's "serious health condition." Her doctor noted she suffered from "severe depression, confusion, [and] inability to perform work tasks." On July 18, 2003, plaintiff submitted a short-term disability form to the company, and on July 23, 2003, plaintiff's doctor requested continued short-term disability leave until September 15, 2003. On September 16, 2003, plaintiff's doctor sent another note saying, "Shashi continues to be completely impaired by her depression," and asked that she remain on leave

5

until October 6, 2003.

On October 1, 2003, plaintiff claims her doctor gave Bio-Medical a note releasing her to work part-time leading to full-time. Plaintiff states she phoned Hamilton the next day to discuss this arrangement. Plaintiff asked if she could apply her disability pay to hours she would miss on a part-time schedule. Hamilton said she would research this possibility. Plaintiff maintains she phoned Hamilton twice the following day and was told both times Hamilton was unavailable.

During plaintiff's leave, Bio-Medical claims it reassigned Pandey's patients to other social workers, and the company's overall patient load decreased. According to Bio-Medical, in light of the diminished workload, it decided to eliminate plaintiff's position. Defendant contends plaintiff's FMLA leave expired on October 2, 2003 – 12 weeks after it began. On October 6, 2003, Bio-Medical mailed plaintiff a letter terminating her position.

The next day plaintiff again phoned Hamilton and was told her position had been eliminated. Hamilton then received a fax from plaintiff's doctor stating plaintiff was unable to work until October 16, after which she could return on a reduced work schedule.

Two months later, defendant decided to hire another social worker. The company justifies its about-face by claiming it received additional funding - and a citation - from the Minnesota

6

Department of Health because of shoddy record-keeping. As a result, Bio-Medical felt it needed a new social worker to better maintain its records. Defendant advertised for this position in the Star Tribune. Plaintiff applied for the position. Defendant states plaintiff delayed two weeks in submitting her work history. Plaintiff claims defendant already had this information. The position was offered to and accepted by another candidate.

 C. Plaintiff's Medical History

Plaintiff has had "severe depression, probable ADD, post-traumatic stress disorder, and anxiety disorder" for ten years. (Sarnoski Aff. Ex. E.) She believes her illness affects her "sleeping, concentrating, interacting with others, working and coping with daily activities." (Compl. ¶ 11.) She claims she frequently needs 40 minutes to fall asleep, has trouble getting out of bed in the morning, and does not enjoy "going out very often." (Pandey Dep. 116:10-120:7.) Plaintiff has been on medication, including Prozac, Paxil, Zoloft, Celexa, Wellbutrin, and Concerta.

Beginning in 1999, plaintiff saw Dr. Lea Hogan for help with her severe depression. In July, 2003, Dr. Hogan hospitalized Pandey for depression. On July 15, 2003, plaintiff's medical records said her "symptoms have persisted and indeed worsened," and "her memory and concentration are very poor." On October 1, 2003, Dr. Hogan released plaintiff to work. She remains under Dr. Hogan's care for severe depression.

D. <u>The Lawsuit</u>

On October 16, 2007, plaintiff sued Bio-Medical for discriminating against her in violation of the ADA (Count 1); retaliatory firing, in violation of the ADA (Count 2); violating ADA confidentiality provisions (Count 3); discrimination, in violation of Title VII (Count 4); and discrimination, in violation of 42 U.S.C. § 1981 (Count 5). Defendant seeks summary judgment, claiming Pandey does not qualify as ADA-disabled, and has failed to present evidence of discrimination, retaliation, or a violation of ADA confidentiality provisions.

II. <u>Discussion</u>

A. <u>Standard</u>

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). This Court examines the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences. <u>Hammond v. Northland Counseling Ctr., Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000). The moving party is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her [or his] case with respect to which she [or he] has the burden of proof." <u>Id.</u> (citation omitted).

B. <u>ADA Disability Discrimination</u>

The ADA prohibits employment discrimination against qualified individuals with a disability. 42 U.S.C. § 12112(a). To demonstrate a prima facie ADA case, plaintiff must show she is disabled under the ADA; is qualified for the employment, with or without reasonable accommodation; and suffered an adverse action as a result of that disability. See <u>Cravens v. Blue Cross and Blue Shield of Kan. City</u>, 214 F.3d 1011, 1016 (8th Cir. 2000); <u>Helfter v. United Parcel Servs., Inc.</u>, 115 F.3d 613, 616 (8th Cir. 1997). Because plaintiff's depression was not substantially limiting, defendant argues she cannot show she is disabled under the ADA. Additionally, defendants argue plaintiff was not qualified for the position she held.

The Court finds plaintiff has failed to demonstrate that her depression substantially limited her major life activities, and, as such, she cannot demonstrate a prima facie ADA case. The ADA defines "disability" as "(a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102. The ADA's major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.

9

12102(2)(A). The Eighth Circuit Court of Appeals has held the "ability to perform cognitive functions on the level of an average person" constitutes a major life activity. Brown v. Lester E. Cox Med. Ctrs., 286 F.3d 1040, 1045 (8th Cir. 2002); see also Moysis v. DTG Datanet, 278 F.3d 819, 825 (8th Cir. 2002).

To determine whether an individual is substantially impaired, courts consider: (1) the impairment's nature and severity; (2) its duration or expected duration; and (3) its long-term impact. See 29 C.F.R. § 1630.2(j)(2). "[T]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis." Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 949 (8th Cir. 1999). Here, plaintiff claims a mental impairment which substantially limits major life activities, and argues she can document a record of such impairment.

Pandey claims her ten-year depression and post-traumatic stress disorder affects "sleeping, concentrating, interacting with others, working and coping with daily activities."[3] (Compl. ¶ 11.) Plaintiff has taken numerous anti-depressants, and has been hospitalized for her illness. The Court focuses on whether her illness substantially limits her major life activities. See

---

[3] The complaint claims a serious impairment that "materially limits" major life activities. (Compl. ¶ 11.) Defendant argues the ADA requires proof of a substantially limiting impairment, contending plaintiff's claim fails because the complaint posits the wrong legal standard. Because we operate under a notice pleading regime, this argument is rejected.

10

Heisler v. Metro. Council, 339 F.3d 622, 627 (8th Cir. 2003).

Plaintiff's claim that her depression affects her sleep is "too conclusory to meet her burden of coming forward with evidence that her depression substantially limits her ability to sleep." Id. at 628. At deposition, plaintiff said she sometimes takes "half an hour to 40 minutes" to fall asleep. (Pandey Dep. 116:10.) The Court finds that occasional 40 minute delays in falling asleep simply fail to "establish that her depression, or any other impairment, significantly restricted her ability to sleep as compared to the general population." Heisler, 339 F.3d. at 628.

Further, plaintiff has failed to demonstrate how her depression affects her ability to interact with others, concentrate, and work in a fashion which substantially limits her life. Plaintiff says that during her breakdown she had "trouble interacting with others" and "trouble concentrating." (Pandey Dep. 117:8-118:14). But she acknowledges that medication addressed these problems. (Id.) Prior to July, 2003, plaintiff states she was able to work and was "able to perform." (Pandey Dep. 73:9-16.) Thus, plaintiff's problems appear episodic, not permanent or long-lasting.

Finally, plaintiff claims her depression affects her ability to cope with daily activities. When asked which daily activities were impacted, plaintiff said she did not "like going out very often" and that she "just get[s] depressed." (Pandey Dep. 120:4-

11

23.) Plaintiff has provided no evidence showing difficulty in living alone or caring for herself. See Cooper v. Olin Corp., 246 F.3d 1083, 1088 (8th Cir. 2001) (affirming defendant who could generally take care of himself was not ADA-disabled). Such conclusory statements, without more, do not show plaintiff's depressive disorder significantly restricted her abilities as compared to the general public.

Plaintiff also maintains she is disabled under the ADA because her medical records show a record of impairment. See 42 U.S.C. § 12102(2)(B). Again, a record of impairment must establish "a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). The Eighth Circuit recognizes that "evidence of a history of an impairment" is not "evidence of a history of a disability." Land v. Baptist Med. Ctr., 164 F.3d 423, 425 (8th Cir. 1999); see also Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998) ("[S]imply being hospitalized [does not] establish a record of an impairment under the ADA."). Plaintiff must still show her record of an impairment that "substantially limits a major life activity." She has failed to do so. Accordingly, defendant's motion for summary judgment on plaintiff's ADA discrimination claim is granted.

C. ADA Retaliation

The ADA prohibits retaliation against those who make an ADA claim. 42 U.S.C. § 12203(a). To sustain an ADA retaliation claim,

plaintiff must show (1) she engaged in a protected activity, (2) resulting in an adverse employment action, (3) that was casually connected to her engaging in the protected activity. See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007). A plaintiff who is not ADA-disabled may pursue a retaliation claim "as long as she had a good faith belief that the requested accommodation was appropriate." Heisler, 339 F.3d at 632. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its adverse employment action. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Should the employer succeed, the burden shifts back to the plaintiff to demonstrate the provided reason is a pretext for illegal retaliation. McDonnell Douglas Corp., 411 U.S. at 802-04. Defendant argues plaintiff cannot make out an ADA retaliation claim because she did not engage in statutorily protected activity. Defendant is wrong.

Multiple circuit courts, including the Eighth Circuit, have assumed or held an employee's request for reasonable accommodation is protected from retaliation. See, e.g., Heisler, 339 F.3d at 632 ("Requesting an accommodation is a protected activity . . . and termination is certainly an adverse employment action."); see also Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2002); Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1265 (10th

13

Cir. 2001).

When plaintiff asked Bio-Medical for a reduced-work schedule, she sought reasonable accommodation. She allegedly made her request on October 1, 2003 - one day before her FMLA leave expired and her employment was terminated. There is no evidence suggesting plaintiff's request was made in bad faith. Thus, plaintiff's accommodation request was protected conduct. Bio-Medical's subsequent termination of plaintiff is an adverse employment action.

Accordingly, the Court must consider whether plaintiff's accommodation request and her subsequent termination were casually connected. Here, a court may consider circumstantial evidence including whether the "adverse employment action followed the protected activity so closely in time as to justify an inference of retaliatory motive." Kim v. Nash Finch Co., 123 F.3d 1046, 1061 (8th Cir. 1997) (quotations omitted). Plaintiff allegedly requested an accommodation on October 1, 2003. She claims she called Bio-Medical several times in the next few days to inquire about working part-time. During the same time period, defendant decided to eliminate plaintiff's position. On October 6, 2003, defendant mailed plaintiff a letter of termination, falling hard upon her accommodation request. Accordingly, plaintiff has set out a prima facie case showing these events were casually connected.

Having established a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the termination. McDonnell Douglas Corp., 411 U.S. at 802. Defendant says legitimate business concerns drove its decision to terminate plaintiff. It states that at the end of plaintiff's leave it did not need another social worker because of declining patient population. If true, this is a legitimate reason for reducing the company's number of employees.

Defendant, having set out a possible non-retaliatory basis for its act, returns the burden to plaintiff to show evidence of pretext. The Court finds she has done so. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) ("[P]laintiff may attempt to establish that [she] was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.") (quotations omitted). Plaintiff offers evidence showing clinic "reports demonstrate that the patient numbers remained at the same level throughout the [sic] June-December 2003." (Pl.'s Mem. Opp'n. Summ. J. 32.) Further, a mere two months after terminating plaintiff's employment, Bio-Medical decided to hire a new social worker. (Sarnoski Aff. Ex. J.) While defendant maintains this decision resulted from a grant of new funds and a need to improve medical record documentation, defendant's refusal to consider plaintiff for the new position further undermines its proffered reasons for her firing. Despite

15

having plaintiff's work history on file, the company ignored her application.

The Court finds material unresolved questions remain for adjudication at trial. Accordingly, defendant's motion for summary judgment on plaintiff's ADA retaliation claim is denied.

    D.  <u>Title VII and 1981 Discrimination Claims</u>

Plaintiff claims defendant discriminated against her in terminating her employment and refusing to rehire her, in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2. To withstand summary judgment, plaintiff must: (1) show she is a member of a protected class; (2) show she is qualified for her position; (3) show she suffered an adverse employment action; and (4) produce evidence showing the employer's improper motivation. <u>Barge v. Anheuser-Busch, Inc.</u>, 87 F.3d 256, 258 (8th Cir. 1996). Once again, the Court applies the <u>McDonnell Douglas</u> burden-shifting analysis to Title VII and § 1981 claims. Defendant denies plaintiff (a) is a member of a § 1981 protected class; (b) is qualified for her position; and (c) has any evidence supporting an inference of unlawful discrimination. The Court analyzes each assertion in turn.

First, defendant maintains plaintiff does not fall within a protected class, because 42 U.S.C. § 1981 protects individuals from race - as opposed to national origin - discrimination. (Def.'s Mem. Supp. Summ. J. 34.) Defendant suggests Meredith's concerns

16

about Pandey's accent related to plaintiff's place of origin, and did not evidence possible racial discrimination.

Defendant makes too fine a distinction. An inquiry about an individual's accent and place of origin can suggest the person asking noted specific ethnic characteristics. See St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) (Brennan, J., concurring) ("The line between discrimination based on ancestry or ethnic characteristics, . . . and discrimination based on place or nation of origin . . . is not a bright one."). The Supreme Court clarified that Congress intended § 1981 "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." Id. Further, the Eighth Circuit has acknowledged "persons belonging to a distinct ethnic sub-group," including people of Lebanese descent, are protected under § 1981. MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1060 (8th Cir. 1988); see also Roxas v. Presentation Coll., 90 F.3d 310, 316 (8th Cir. 1996) (affirming that an Asian priest born in the Phillippines demonstrated a prima facie case under § 1981).

Plaintiff is from India. She bases her § 1981 claim on a denial of rights because of her race and ethnicity. She particularly claims she was treated differently from Caucasian employees, and was fired due to her national origin, ethnicity, and race. Defendant's attempts to navigate between ethnicity and

17

national origin are unavailing.

Next, the Court asks whether plaintiff was qualified for her position. Defendant claims plaintiff did not fulfill the "essential functions of her position." It contends plaintiff's "documented history of poor communication, poor record keeping, poor follow through, and inconsistent attendance is clear." (Def.'s Mem. Supp. Summ. J. 27.) It cites complaints by Schawb, Hamilton, and a patient's relative, and plaintiff's failure to complete required forms. Plaintiff states her job performance has been mischaracterized.

When evidence of an employee's performance is in conflict, summary judgment is precluded. Cf. Webb v. St. Louis Post Dispatch, 51 F.3d 147, 149 (8th Cir. 1995). While defendant did possess a five-year record of job performance concerns, it did not terminate her employment during that time. Indeed, plaintiff's reviews indicate that, overall, Bio-Medical appeared satisfied with her performance. In 2001 and 2002, those reviews show plaintiff met or exceeded company expectations. Bio-Medical stands on unstable ground when it claims it should have fired plaintiff earlier, but chose to bide its time until plaintiff took medical leave.

Plaintiff also proffers evidence showing an inference of Bio-Medical's improper motivation. After then-new clinic manager Meredith met plaintiff and inquired about her national origin and

accent, Meredith deliberately sought negative feedback concerning plaintiff. When employees complied, she thanked them noting, "this is the kind of information I need . . . ." Plaintiff also complains of disparate treatment by Schwab, who tracked her and required check-ins between meetings, but did not ask the same of Karen Eckstrom, a Caucasian social worker.

Defendant argues plaintiff cannot credibly accuse Meredith of discrimination because plaintiff reportedly told the Equal Employment Opportunity Commission that she was not discriminated against before October 7, 2003, the date of her termination. At least at this stage of the proceedings, defendant is incorrect. While this evidence may go to plaintiff's credibility at trial, summary judgment requires the Court to confront the evidence proffered by plaintiff.

Next, defendant denies plaintiff can identify another employee whose "performance problems rose to the level of necessitating repeated counseling and reassignment of patients." This claim denies plaintiff has found a suitable comparator among defendant's non-Indian employees. Where plaintiff, however, argues she suffered repeated counseling and reassignment of patients because of her Indian ethnicity, she raises a genuine issue of material fact as to whether Bio-Medical subjected her to disparate treatment.

Finally, defendant argues that, even if plaintiff makes out a

prima facie case, it has legitimate, non-discriminatory reasons for plaintiff's termination and its refusal to rehire her.  Here again, defendant argues plaintiff was terminated because of patient-decrease and plaintiff's consistent underperformance.  For purposes of summary judgment, the Court has already explained that there remain unresolved issues of fact necessitating trial, which preclude the grant of summary judgment.

    E.   <u>ADA Confidentiality Provisions</u>

Plaintiff's complaint accuses Bio-Medical of placing medical-related material in plaintiff's non-medical personnel file, in violation of 42 U.S.C. § 12112(d)(3)(B).  Defendant proffers evidence that the clinic maintained these files separately, and plaintiff neither disputes this claim nor offers evidence to the contrary.  Summary judgment is granted on this count.

Accordingly, IT IS ORDERED that:

1.   Summary judgment is granted as to Counts 1 and 3.

2.   Summary judgment is denied as to the remaining counts.

Dated:  August 10, 2009

<u>S/JAMES M. ROSENBAUM</u>
JAMES M. ROSENBAUM
United States District Judge